Schaberg-Dietrich Hardware Company v. Commissioner.
Schaberg-Dietrich Hardware Co. v. Commissioner
Docket No. 7813.
United States Tax Court
1947 Tax Ct. Memo LEXIS 283; 6 T.C.M. (CCH) 269; T.C.M. (RIA) 47062; March 5, 1947
*283 Thomas J. Bailey, Esq., 1102 Olds Tower Bldg., Lansing, Mich., J. Thomas Smith, Esq., and M. D. Harris, C.P.A., 1102 Olds Tower Bldg., Lansing, Mich., for the petitioner. Clarence E. Price, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies for calendar year as follows: Declared Value
Income
Excess-
Excess-
Years
Tax
Profits Tax
Profits Tax
1940
$1,425.49
1941
8,127.49
$3,081.24
$12,507.32
1942
6,280.74
63,099.61 The Commissioner disallowed a portion of the deduction claimed for each year for salaries of officers and stockholder-employees. He explained that the lesser amount allowed by him was the limit of reasonable compensation for the services rendered and a portion of the salaries represented by the deductions claimed were not paid within the taxable year or within two and one-half months thereafter, and the deductions were not allowable under section 24(c). The only issue for decision is the correctness of that action of the Commissioner. Findings of Fact The petitioner is a Michigan corporation. Its returns for the years in question were filed with the collector of internal revenue for the district of Michigan. The principal place *284 of business of the petitioner is at Lansing, Michigan, where it is engaged in the business of selling at wholesale and retail, hardware, mill supplies, builders' hardware, household goods, sporting goods, and toys. Its salesmen cover territory within a radius of 50 miles of Lansing. The petitioner was organized in September 1923 by John Dietrich, W. M. Dietrich, and A. R. Schaberg. It was started as a new enterprise and its business has been built up by its officers and directors. Its original capital stock was $12,910. It had outstanding capital stock at the end of 1940 in the amount of $139,620 and in the amount of $172,180 at the end of each of the next two years. It had a deficit of about $12,000 at the beginning of 1940. Its stockholders contributed $10,000 as paid-in surplus during that year and at the end of the year it had a surplus of $1,407.12. Its surplus at the end of 1941 was $14,056.05, and at the end of 1942 it was $29,458.86. The salaries of its officers, directors, and stockholder-employees for each of the taxable years were fixed by a resolution of the Board of Directors at a meeting held in February of each year. These were straight salaries in fixed amounts. No *285 consideration was given to the amount of stock held by any individual in fixing the amount of his salary. The salary of each officer, director, and stockholder-employee was credited to his account during the year and was subject to withdrawal by him without restriction or limitation during the year. Each one of those persons reported for each of those years the entire amount of salary authorized and credited to his or her account, except that Edith Dietrich Gates did not report the $3,000 credited to her for the year 1942. The following table shows the salaries authorized and credited to the accounts of the principal stockholder-employees during the period from 1926 through 1942: Simeon R.
John H.
Ernest W.
Arthur R.
William M.
Year
Dietrich
Dietrich
Schaberg
Schaberg
Dietrich
1926
$ 4,500.00
$ 2,000.00
$ 4,500.00
$ 4,500.00
1927
4,500.00
2,500.00
4,500.00
5,000.00
1928
4,500.00
2,500.00
4,500.00
5,000.00
1929
$ 8,500.00
5,000.00
3,500.00
5,000.00
1930
8,500.00
5,000.00
3,500.00
5,000.00
1931
5,950.00
3,500.00
2,052.45
3,500.00
1932
4,500.00
2,450.00
3,000.00
2,916.67
1933
4,230.11
* 1,047.37
1,976.61
* 2,066.98
1934
4,500.00
2,150.00
3,000.00
1935
5,950.00
2,700.00
2,700.00
4,000.00
1936
10,000.00
6,750.00
6,250.00
7,500.00
3,500.00
1937
10,000.00
6,750.00
6,250.00
7,500.00
1938
7,500.00
5,000.00
4,500.00
5,500.00
1939
6,000.00
4,000.00
3,600.00
4,400.00 * 3,808.00
1940
8,000.00
5,000.00
4,500.00
5,500.00
5,500.00
1941
12,000.00
9,000.00
7,500.00
10,000.00
10,000.00
1942
16,500.00
12,500.00
10,500.00
14,000.00
14,000.00
Edith
G. Walter
Martin J.
Robert W.
Alvin
Dietrich
Year
Dietrich
Dietrich
Dietrich
Schaberg
Gates
1926
1927
1928
1929
1930
$2,600.00
$1,480.00
1931
1,820.00
1,440.00
1932
1,500.00
$ 1,666.67
1,100.00
1933
1,535.54
1,122.99
1934
1,800.00
$1,040.00
1,200.00
1935
2,250.00
1,450.00
1,560.00
1936
5,250.00
3,000.00
3,000.00
3,000.00
1937
3,000.00
3,000.00
3,000.00
$ 626.00
1938
4,000.00
2,400.00
2,400.00
1,000.00
1939
3,200.00
* 2,770.00
2,150.00
2,150.00
900.00
1940
4,000.00
4,000.00
2,700.00
2,700.00
1,200.00
1941
6,500.00
7,000.00
4,500.00
4,500.00
324.00
1942
9,500.00
10,000.00
7,500.00
5,600.00
3,000.00
*286 The salaries authorized and credited to the accounts of the above-named officers, directors and stockholder-employees were all paid in cash during the taxable years, with the exception of $12,080 for 1940, $28,890 for 1941, and $12,100 for 1942, which amounts represented the undrawn portion of the salaries of certain of the persons. There was no scheme or pattern in the salaries undrawn. The corporation at the end of each year issued its demand notes for the amount of all undrawn salaries. The notes bore interest at 5 per cent and all were eventually paid in full, used to purchase stock of the petitioner, or contributed to its capital. The following table shows the total amount claimed by the petitioner as a deduction for each year for compensation of officers, directors, and stockholder-employees, the amount thereof disallowed, and the amount thereof allowed by the Commissioner: Years
Claimed
Disallowed
Allowed
1940
$ 47,300
$ 8,800
$38,500
1941
77,824
37,900
39,924
1942
111,700
70,000
41,700
The six Dietrichs and the three Schabergs, whose salaries are here in question, devoted their full time and attention to the affairs of the petitioner during the taxable years. They worked *287 extra hard and for extra long hours without any vacations during the taxable years. The following table shows the percentage of stock held by each stockholder during the periods here in question: 1939-40
1941-42
Simeon R. Dietrich
26.50%
24.20%
John H. Dietrich
10.68%
11.90%
Ernest W. Schaberg
7.74%
10.00%
Arthur R. Schaberg
25.33%
21.60%
William M. Dietrich
19.84%
18.80%
G. Walter Dietrich
2.30%
3.30%
Martin J. Dietrich
2.94%
5.70%
Robert W. Dietrich
.14%
.10%
M. Neller
.72%
1.10%
Alvin Schaberg
1.89%
2.90%
Edith Dietrich Gates
.24%
.40%
Carl and Julia Trarup
1.68%
The following table shows sales, salaries, net profits, income tax, and dividends of the petitioner for the years 1926 through 1942: Net Profit
Before
Year
Sales Net
Salaries
Salaries
1926
$106,442.05
$ 17,359.11
$ 15,500.00
1927
103,947.27
18,696.94
16,500.00
1928
215,551.45
20,607.45
16,500.00
1929
332,189.31
27,948.62
22,000.00
1930
238,465.72
33,635.20
31,190.00
1931
189,203.06
22,137.72
20,872.45
1932
158,034.99
20,439.57
23,233.34
1933
152,516.23
15,908.32
16,627.24
1934
240,815.06
22,892.21
19,790.00
1935
384,490.90
39,493.88
27,570.00
1936
477,994.67
64,864.52
49,750.00
1937
554,014.27
43,981.27
41,626.00
1938
382,992.99
22,747.74
33,650.00
1939
413,866.40
36,961.96
34,228.00
1940
495,521.47
47,583.54
44,600.00
1941
690,376.67
90,073.48
73,324.00
1942
981,644.01
133,074.47
105,700.00
*288 Net Profit
Income and
After
Excess Profits
Net
Divi-
Year
Salaries
Taxes
After Taxes
dends
1926
$ 1,859.11
$ 1,859.11
1927
2,196.94
$ 26.59
2,170.35
1928
4,107.45
132.89
3,974.56
1929
5,948.62
324.35
5,624.27
$9,841.54
1930
2,445.20
2,445.20
6,741.99
1931
1,265.27
1,265.27
1932
( 2,793.77)[1]
( 2,793.77)[1]
1933
( 718.92)[1]
( 718.92)[1]
1934
3,102.21
426.55
2,675.66
1935
11,923.88
1,984.52
9,939.36
1936
15,114.52
2,166.70
12,947.82
9,157.00
1937
2,355.27
349.58
2,005.69
6,457.50
1938
(10,902.26)[1]
(10,902.26)[1]
1939
2,733.96
341.76
2,392.20
1940
2,983.54
443.06
2,540.48
1941
16,749.48
3,752.38
12,997.10
1942
27,374.47
8,858.47
18,516.00
The petitioner had 26 employees at the end of 1941 who were not stockholders. This number increased to 32 at the end of 1942. The percentage of increase in the compensation of some of these employees for 1942 over the amount received by them for 1941 was as great as the corresponding percentage of increase in the compensation of stockholder-employees. Simeon R. Dietrich was president and general manager of the petitioner during the taxable years. He had long experience in the type of business conducted by the petitioner. He had received a salary as high as $12,000 before coming with the petitioner in 1929. He originally *289 came to the petitioner in 1929 at a salary of $8,500 because he thought he would eventually make more money with the petitioner. John H. Dietrich was a vice president of the petitioner. He had had long experience in the hardware business prior to the taxable years. He had entire charge of the wholesale business, including buying and selling building hardware and figuring contracts. He also had charge of the preparation of the petitioner's catalog. He got out a new catalog in 1941 and changed the method of pricing used by the petitioner. G. Walter Dietrich and Robert W. Dietrich worked under him during the taxable years. Arthur R. Schaberg was secretary of the petitioner and in charge of its retail business. Ernest W. Schaberg was a vice president and had charge of all advertising, window display, merchandising, and the household and toy departments. He did all the buying and was responsible for the selling in those departments. He had had special training in window trimming and advertising. William M. Dietrich was treasurer of the petitioner and in charge of its finances. He was one of its principal salesmen. He had under him G. Walter Dietrich and Martin J. Dietrich. They were engaged *290 in selling mill supplies at wholesale. Long experience and mechanical knowledge and ability were essential to the success of their endeavors. They were responsible for a large part of the sales of the petitioner during the taxable years. They paid their own expenses for travel and entertaining customers and were not reimbursed for these expenditures by the petitioner. Commissions at the prevailing rates upon the sales made by them during the taxable years would have exceeded the salaries authorized for and credited to them during the taxable years. They had all had considerable experience in the wholesale mill supply business. Robert W. Dietrich worked in connection with the mill supplies and wholesale business. He had something to do with pricing and he followed up and carried out some of the orders obtained by others. He entered the Army in 1942. Unsuccessful efforts were made to replace him and his duties had to be performed thereafter by some of the other stockholder-employees. Alvin Schaberg was in charge of the sporting goods department of the petitioner's retail business. He did the purchasing and had several salesmen under him. The salary of the office manager of the petitioner *291 who was not a stockholder was $2,700 for 1940, $4,500 for 1941, and $6,000 for 1942. A part of the increase in the petitioner's business during the taxable years was due to the stimulus of the war. It became difficult during those years to obtain goods for sale. Competition during those years was keen. Employees of the petitioner were enticed away by higher wages paid by other employers and it was difficult to find new employees sufficiently experienced in the petitioner's business. The petitioner had to obtain substitutes for some goods that were scarce. The Dietrichs and Edith Dietrich Gates are brothers and sister. Arthur R. Schaberg is their brother-in-law, Ernest W. Schaberg is a brother of Arthur. Alvin Schaberg is a cousin of Arthur and Ernest. The petitioner failed to pay dividends in certain years either because its earnings at the time for the expansion of the business. The compensation authorized and credited to the accounts of each of the six Dietrichs and the three Schabergs for each of the taxable years was reasonable compensation for the services rendered by each recipient during the year to which the amount related. The facts stipulated by the parties are incorporated *292 herein by this reference. Opinion MURDOCK, Judge: The respondent devotes a substantial part of his brief to an argument that a part of the salaries here in question was not deductible because of the provision in section 24(c), I.R.C. that no deduction shall be allowed for expenses under section 23(a) if three conditions are all present. One of them is that the amount is not, unless paid, includible in the gross income of the employee for the taxable year under the method of accounting used by that person. The respondent points out that the salaries of some of these employees were not withdrawn or otherwise paid during the taxable years but were covered by promissory notes of the petitioner issued at the end of the years. The evidence shows clearly that the full salary of each employee was credited to his account during the year and he was at liberty to withdraw the entire amount of it during the year. Some of the employees did not choose to withdraw the entire amount credited to them. The corporation at the end of the year closed out the salary accounts and allowed the undrawn portions to draw interest by issuing its notes for those undrawn portions. The notes carried interest at 5 *293 per cent and were later paid. It is clear from the record that the entire amount of salary credited during each year to each employee was unqualifiedly subject to his demand during the year and, under the method of accounting of the employee, the amount thereof was includible in his gross income for the taxable year. Incidentally, it appears that each employee, with one exception, reported the full amount for the appropriate year. It is unnecessary to consider whether or not the other three conditions of 24(c) are present. That provision is inapplicable. The respondent alleged in his answer that the total deduction which he allowed for each year for compensation consisted of $6,000 for Simeon R. Dietrich, $4,000 for John H. Dietrich, $3,600 for Ernest W. Schaberg, $4,400 for Arthur R. Schaberg and for William M. Dietrich, $3,200 for G. Walter Dietrich and for Martin J. Dietrich, $2,150 for Robert W. Dietrich and Alvin Schaberg, and the full amount of the salary for each year credited to Margaret Neller, H. M. Ditzler and Edith Dietrich Gates, except that he allowed no salary for the latter for 1942. The petitioner never admitted the correctness of this breakdown but seems to have accepted *294 it in writing his brief. We conclude, therefore, that the Neller and Ditzler salaries, and the Gates salaries for 1940 and 1941, are not in dispute. There is no evidence in the record as to the services performed by Edith Dietrich Gates during 1942 or what her duties or capabilities were. She had received a very small salary in 1941. We are unable to conclude from the evidence that the Commissioner erred in disallowing the $3,000 claimed as a deduction for compensation paid to her in 1942. Further discussion will relate only to the salaries of the six Dietrichs and the three Schabergs. Nothing in the record affirmatively supports the determination in regard to these remaining employees. The respondent says that the petitioner adopted the practice of distributing its profits in the form of salaries rather than as dividends in order to avoid taxes. The record does not support that statement. The respondent is unable to point out, and a careful study of the record fails to disclose, any connection between the salaries paid to any one of the individuals and the stock owned by that person. There is direct testimony that the stockholdings of the individuals were not considered in fixing *295 the salaries, and this is corroborated by other evidence. Some relation can be shown by ranging the stockholders in the order of the amount of their stockholdings and comparing that with the order of the employees arranged as to amounts of salary, but we are unable to find any significance in this circumstance. Simeon R. Dietrich owned the most stock and received the largest salary, but the record shows clearly that the amounts paid to him were reasonable compensation for each year for the personal services actually rendered by him. There is other evidence to indicate that the salaries paid to the others were substantially in proportion to the services which they rendered and they were, in many instances, all out of proportion to their stockholdings. The respondent argues that there was no evidence of any of the duties or responsibilities of Alvin Schaberg. He is mistaken in that because the evidence shows that this employee, who was not an officer or director, had had some experience before coming to the petitioner, had been with the petitioner since about 1930, had been given a number of jobs in the petitioner's organization, and during the taxable years had entire charge of the *296 petitioner's sporting goods department, including the buying and the supervision of the clerks under him in that department. The total salary paid Alvin for these three years is less than that paid to any other of the persons whose salary is now under discussion. His salary about paralleled that of the nonstockholder bookkeeper and office manager whose salary the Commissioner has allowed to be deducted in full for each year. Another argument which the Commissioner makes is that the net sales of the petitioner were low in comparison to the salaries paid. He also argues that the net sales increased about 100 per cent during the period here in question, while the salaries increased more than 200 per cent. The salaries here in question are not limited to salaries of executives. While most of the individuals were officers or directors, nevertheless, some of those who were directors were not paid their salaries for performing executive duties but merely as salesmen. The record indicates that a number of them could have earned more on a commission basis than they were paid in straight salary. There is in this record little reason to question the reasonableness of the amount paid to them. *297 All of the officers and employees in this list were mature men, experienced in the business of the petitioner and capable of performing important duties assigned to them. They were not always in agreement as to the proper amount of their salaries. Simeon was the final arbitrator in deciding how much each was entitled to receive. One of the officers, not entirely satisfied with the compensation being paid him by the petitioner, left its employ and went to work elsewhere. He was brought back at a higher salary. It is a fact that the salaries and wages were increased materially in 1942 over what they had been previously. The salaries for that year appear to be relatively large. However, duties had increased, sales had increased, and profits had increased. The success of this business was largely due to the activities of these individuals, and it is not inappropriate that they should take a substantial part of the profits of the business in salaries. The earnings, after taxes, for 1941 and 1942 represented a fair return on the capital invested in the business. The record has been scrutinized carefully, as is proper in a case like this, but such scrutiny fails to reveal that these salaries *298 were fixed on any other than an arm's length quantum meruit basis. The action of a board of directors fixing salaries should not be disturbed unless some real reason appears. Here the preponderance of the evidence shows that the salaries of the six Dietrichs and the three Schabergs represented reasonable compensation for personal services actually rendered by them during the taxable years and the Commissioner erred in disallowing a portion thereof. Decision will be entered under Rule 50. Footnotes
*. Part of year only.↩
1. ( ) indicates loss. ↩